JAMES C. OTTESON, State Bar No. 157781
BRANDON D. BAUM, State Bar No. 121318
DAVID A. CAINE, State Bar No. 218074
THOMAS T. CARMACK, State Bar No. 229324
AGILITY IP LAW, LLP
149 Commonwealth Drive
Suite 1033
Menlo Park, CA 94025
Telephone:   (650) 227-4800
Facsimile:    (650) 318-3483
Email: jim@agilityiplaw.com
Email: brandon@agilityiplaw.com

Attorneys for Plaintiff
TRIREME MEDICAL, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIREME MEDICAL, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANGIOSCORE, INC.,<br><br>　　　　　Defendant. | CASE NO.: 14-2946<br><br>**COMPLAINT FOR CORRECTION OF INVENTORSHIP**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff TriReme Medical, LLC ("TRIREME"), by and through its attorneys, allege against Defendant AngioScore, Inc. ("ANGIOSCORE") as follows:

**PARTIES**

1.　　Plaintiff TRIREME is a medical device company based in Pleasanton, California. TRIREME is a limited liability company dedicated to developing, manufacturing and distributing advanced therapeutic solutions for the treatment of complex vascular disease. TRIREME works with leading engineers and global thought leaders to offer physicians new and differentiated devices to improve outcomes in complex peripheral and coronary interventions.

2. On information and belief, ANGIOSCORE is a Delaware corporation, with a principal place of business in Fremont, California.  ANGIOSCORE conducts business within this judicial district.

**JURISDICTION AND VENUE**

3. This is a civil action for correction of patent inventorship under the United States Patent Laws, 35 U.S.C. § 1 et seq., including §§ 116 (Inventors) and 256 (Correction of Named Inventor).  Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338(a).

4. Venue is proper in the Northern District of California under 28 U.S.C. § 1391.

5. This Court has personal jurisdiction over ANGIOSCORE because ANGIOSCORE is a resident of the State of California and, on information and belief, has conducted, and continues to regularly conduct, business within the State of California and within this judicial district.

**INTRADISTRICT ASSIGNMENT**

6. This is an Intellectual Property Action to be assigned on a district-wide basis pursuant to Civil Local Rule 3-2(c).

**GENERAL ALLEGATIONS**

7. Defendant ANGIOSCORE was co-founded in 2003 by Eitan Konstantino, Ph.D. ANGIOSCORE claims to be the owner, by assignment, of U.S. Patent Nos. 8,080,026 (the "'026 patent"), 8,454,636 (the "'636 patent") and 8,721,667 (the "'667 patent") (collectively, the "Patents-in-Suit").

8. Dr. Chaim Lotan is an individual residing in Israel, where he is a medical doctor specializing in interventional cardiology.  Dr. Lotan founded the Israeli Working Group for Interventional Cardiology and served as its Secretary General for 4 years.  In 1996, Dr. Lotan was appointed Director of Interventional Cardiology and Cardiac Catheterization in Hadassah Medical Center in Jerusalem and was appointed as the director of the Hadassah Heart Institute in 2000.  Dr. Lotan is the chairman of the Ministry of Health Committee for Certification & Licensing of Coronary Stents in the Israel, and has been a principal investigator in many of the leading studies in interventional cardiology and coronary stents, authoring many publications in

this field. In 2011, he was selected President of the Israel Heart Society for a 2-year term. Dr. Dr. Lotan was appointed to the David and Rose Orzen Chair in Cardiology at the Hebrew University-Hadassah Faculty of Medicine.

9. Beginning in 2002, Dr. Konstantino, and others, including Tanhum Feld, began consulting with Dr. Lotan about a new medical device for treating stenosis in the vascular system. Specifically, Dr. Konstantino, Mr. Feld and Dr. Lotan, among others, exchanged ideas for an angioplasty balloon having associated cutting blades for the treatment of coronary arterial vasculature.

10. On January 21, 2003, before ANGIOSCORE was incorporated, Dr. Konstantino filed a provisional patent application with the United States Patent and Trademark Office (USPTO) to preserve the priority date for the invention of a "Spiral Balloon."

11. Dr. Konstantino decided to pursue this idea and form a new company. Dr. Lotan put Dr. Konstantino in touch with Dr. Gary Gershony, and in 2003, Dr. Konstantino and Dr. Gershony together with three others, co-founded ANGIOSCORE.

12. Dr. Konstantino also retained a patent attorney to pursue a formal (non-provisional) utility patent application entitled "Apparatus and Methods for Treating Hardened Vascular Lesions." That formal application, No. 10/631,499, was filed by ANGIOSCORE on July 30, 2003, and names Dr. Konstantino, Tanhum Feld and Nimrod Tzori as co-inventors.

13. In the meantime, during the early part of 2003, Dr. Konstantino asked Dr. Lotan to conduct testing of certain prototypes of Spiral Balloon devices. The testing was conducted at the Interventional Cardiology Research Laboratories at Hadassah University Hospital, where Dr. Lotan served as Director.

14. As a result of the testing and Dr. Lotan's clinical experience with angioplasty, Dr. Lotan determined that there were several flaws in the design of the prototypes. Dr. Lotan discussed his findings with at least Dr. Konstantino and Tanhum Feld. In a written report dated April 14, 2003, Dr. Lotan described some of the changes to the devices that would solve the problems revealed by his testing.

15. Dr. Lotan's recommended changes to the design of the device resulting from the testing did not impact the initial product design and thus were not included in the original patent application filed by ANGIOSCORE on July 30, 2003. However, they were included in a continuation-in-part application that was filed by ANGIOSCORE on March 4, 2004, as application number 10/810,330, which eventually ripened into U.S. Patent No. 7,955,350, a parent to the Patents-in-Suit.

16. Dr. Lotan's contribution to the inventions resulting from his testing are part of the new matter included in the continuation-in-part. Specifically, Dr. Lotan recommended changes to attachment of the scoring structure to account for forces observed during the testing and known to Dr. Lotan from his clinical experience that caused the original prototypes to fail.

17. Dr. Konstantino left ANGIOSCORE in 2007. For all three Patents-in-Suit, both Dr. Konstantino and Mr. Feld were not involved in the prosecution of the claims since 2007 and were not consulted on inventorship questions once the final claims were negotiated with the USPTO and prior to granting of the Patents-in-Suit.

18. Furthermore, the applications resulting in the '636 and '667 patents were filed November 4, 2011 and March 15, 2013 respectively, several years after all three of the named co-inventors listed on those patents left ANGIOSCORE. At least Dr. Konstantino and Mr. Feld were not even contacted by ANGIOSCORE to verify who should be named as co-inventors for the claims ultimately allowed by the USPTO on those patents.

19. After years of prosecution and numerous amendments to the claim language, the Patents-in-Suit were issued by the USPTO; the '026 patent issued on December 20, 2011; the '636 patent issued on June 4, 2013, and the '667 patent issued on May 13, 2014. Dr. Lotan's contributions were specifically included in at least independent claims 1 and 35 of the '026 patent, independent claim 1 of the '636 patent, and independent claim 1 the '667 patent.

20. Dr. Lotan made other significant contributions to the Patents-in-Suit that are reflected in the issued claims, and Plaintiff is informed and believes that discovery from ANGIOSCORE will corroborate those contributions.

21. In December 2013, prior to the issuance of the '667 patent, Dr. Lotan informed ANGIOSCORE's President and CEO, Tom Trotter, of the significant contributions he had made toward ANGIOSCORE's intellectual property. ANGIOSCORE refused, and continues to refuse, to add Dr. Lotan as an inventor on any of the Patents-in-Suit or otherwise correct inventorship to reflect the true inventors.

22. Dr. Lotan has exclusively licensed all legal and equitable interests in the Patents-in-Suit to TRIREME.

## COUNT I

**Correction of Inventorship of U.S. Patent No. 8,080,026**

23. TRIREME incorporates by reference paragraphs 1 through 22 as though fully set forth herein.

24. An actual and justiciable controversy exists regarding whether Dr. Lotan should be named as an inventor of the '026 patent and whether Dr. Lotan was erroneously omitted as an inventor.

25. TRIREME seeks an order directing the Director of the USPTO to correct inventorship of the '026 patent to name Dr. Lotan as an inventor.

## COUNT II

**Correction of Inventorship of U.S. Patent No. 8,454,636**

26. TRIREME incorporates by reference paragraphs 1 through 22 as though fully set forth herein.

27. An actual and justiciable controversy exists regarding whether Dr. Lotan should be named as an inventor of the '636 patent and whether Dr. Lotan was erroneously omitted as an inventor.

28. TRIREME seeks an order directing the Director of the USPTO to correct inventorship of the '636 patent to name Dr. Lotan as an inventor.

## COUNT III

### Correction of Inventorship of U.S. Patent No. 8,721,667

29. TRIREME incorporates by reference paragraphs 1 through 22 as though fully set forth herein.

30. An actual and justiciable controversy exists regarding whether Dr. Lotan should be named as an inventor of the '667 patent and whether Dr. Lotan was erroneously omitted as an inventor.

31. TRIREME seeks an order directing the Director of the USPTO to correct inventorship of the '667 patent to name Dr. Lotan as an inventor.

### **PRAYER FOR RELIEF**

WHEREFORE, TRIREME prays for judgment as follows:

(a) An order directing the Director of the USPTO to issue a certificate correcting inventorship of the Patents-in-Suit, and any related patents that may issue therefrom and for which Dr. Lotan is found to be an inventor, by including Dr. Lotan as an inventor of one or more claims of the Patents-in-Suit;

(b) A declaration that this case be deemed exceptional pursuant to 35 U.S.C. section 285, as appropriate and provided by law;

(c) Reasonable attorneys' fees, costs, and expenses, as appropriate and provided by law; and

(d) Such other and further relief as the Court deems just and proper, including the empanelment of an advisory jury on one or more factual issues for which, in the Court's discretion, findings of fact may be necessary to the legal determination of inventorship.

Date: June 25, 2014

Respectfully submitted,

AGILITY IP LAW, LLP

*/s/ Brandon D. Baum*
Brandon D. Baum

Attorney for Plaintiff
TRIREME MEDICAL, LLC

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable.

Date: June 25, 2014

AGILITY IP LAW, LLP

Brandon D. Baum

Attorney for Plaintiff
TRIREME MEDICAL, LLC

COMPLAINT

- 7 -