1 | James C. Otteson, (157781)
james.otteson@aporter.com
2 | David A. Caine, (218074)
david.caine@aporter.com
3 | Thomas T. Carmack, (229324)
tom.carmack@aporter.com
4 | Michael D.K. Nguyen, (264813)
michael.nguyen@aporter.com
5 | ARNOLD & PORTER LLP
1801 Page Mill Road, Suite 110
6 | Palo Alto, CA 94304-1216

7 | Attorneys for Plaintiff
TRIREME MEDICAL, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TRIREME MEDICAL, LLC, | Case No.: 3:14-cv-02946-LB |
| Plaintiff, | **JOINT LETTER BRIEF** |
| vs. | |
| ANGIOSCORE, INC., | |
| Defendant. | |

06089-00001/8228234.2

Please find attached hereto a Joint Letter Brief submitted by the parties.

Dated:  August 5, 2016                                    Respectfully Submitted

ARNOLD & PORTER LLP


By:   /s/ David A. Caine
      David A. Caine
      Attorneys for Plaintiff
      TRIREME MEDICAL, LLC


**ATTESTATION**

      I, David A. Caine, am the ECF User whose ID and password are being used to file this document.  In compliance with Local Rule 5-1(i)(3), I hereby attest that Matthew Robson has concurred in this filing.


Date:   August 5, 2016                        /s/ *David A. Caine*
                                              David A. Caine

August 5, 2016

**VIA ELECTRONIC FILING**

Hon. Laurel Beeler
San Francisco Courthouse
Courtroom C - 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

      Re:    *TriReme Medical, LLC v. AngioScore, Inc.,*  Case No. 3:14-cv-02946-LB

Dear Judge Beeler:

As discussed at the August 4, 2016 CMC, the parties submit this joint letter brief.

**Statement of Unresolved Issue**

*TriReme:* Whether AngioScore's production of selected portions of the prosecution files for the patents-in-suit, and patent applications related thereto, waives privilege with respect to all prosecution files concerning the same subject matter.

*AngioScore:* In mid-July, AngioScore obtained the hardcopy files of its former prosecution counsel for the patents-in-suit, their parent applications, and the original provisional application in the family. These files were previously maintained by James Heslin, AngioScore's former prosecution counsel, and contain communications between the named inventors and Mr. Heslin. These communications confirm that TriReme's current CEO, Dr. Konstantino, was involved in the original inventorship determination and further confirm that the inventorship of the patents-in-suit is correct. They also corroborate the testimony of Dr. Tzori, a named inventor on all patents-in-suit, that he – and not Dr. Lotan – invented the compliance tube feature at issue in this case. *See* Ex. D at 133:20-22 (7/28/16 Tzori Dep.) ("**Q. So it was your idea to use a compliance tube? A. Right**."), corroborated by Ex. B at 28 (4/24/03 email frm. Tzori to Heslin describing a "polymeric tube [] attached to the outer surface of the proximal end of the device"); *see also* Ex. B at 67 (1/19/03 Konstantino email) ("On this patent I am the inventor. When I will be back we can also submit the second patent that will include few more embodiments and two more inventors (Tanhum and Nimrod)." Dr. Lotan is not identified in any of these communications as an inventor of anything.

AngioScore promptly reviewed the files and produced all non-public material that was either: (i) non-privileged or (ii) relevant to inventorship, whether by discussing inventorship *per se* or the contributions to the subject matter disclosed or claimed in the patents-in-suit, their parents, or the original provisional application. By voluntarily disclosing these communications regarding inventorship, AngioScore agrees that it has waived attorney-client privilege over all portions of the files relevant to inventorship. AngioScore has thus produced all such documents from these files and provided a redaction/privilege log for the remainder.

TriReme baselessly argues for a much broader waiver.  Specifically, it seeks production of "all prosecution files," without clarifying just what specific applications or files are included in this broad request.  TriReme's proposed waiver would sweep up a host of communications irrelevant to the inventorship issue and unrelated to the communications produced.  This is improper.

**Summary of Each Party's Position**

*TriReme:*  October 6, 2014, AngioScore responded to document requests seeking prosecution files by asserting the attorney-client privilege and work product immunity.  TriReme heard nothing more about the prosecution files for ***nearly two years*** until AngioScore made a 132-page document production on the night of August 2, 2016.[1]  The accompanying letter advised that "many of these materials are privileged," but would be produced "given the inventorship issues in dispute in this matter and the upcoming deposition of Mr. Heslin."  Ex. A.

Upon review of AngioScore's production, TriReme informed AngioScore that had broadly waived privilege with respect to all documents concerning the same subject matter, and requested production of all withheld documents.  AngioScore refused, arguing that the production "extends to the issues relevant to Dr. Lotan's inventorship claims, but no further."  This argument is wrong for two reasons.

*First*, where a party has made a voluntary waiver, Federal Rule of Evidence 502(a) requires the production of any "undisclosed communication or information" where:  "(1) the waiver is intentional; (2) the disclosed and undisclosed information concern the same subject matter; and (3) they ought in fairness to be considered together."  Further, the producing party—not the requesting party, as AngioScore argues—has the burden to show that the withheld documents are privileged and outside the scope of the waiver.  *See Theranos, Inc. v. Fuisz Techs., Ltd.*, Case No. C 11-5236 PSG, 2013 WL 2153276 at *3 (N.D. Cal. May 15, 2013).  The subject matter of the waiver cannot be defined beforehand; it is determined by reviewing what the produced documents actually disclose.  *Id.* at *3.

Here, the Rule 502(a) analysis is straightforward.  AngioScore does not dispute making an intentional privilege waiver or that it intends to rely on the documents it produced.  Moreover, as discussed more fully below, the produced communications discuss every aspect of the prosecution and are therefore of the same subject matter as the remainder of the documents.  AngioScore admits it has produced prosecution documents discussing more than inventorship, but argues for an exception to the waiver rule because it could not produce the documents it wanted regarding inventorship without some overlap into other areas.  No such "overlap" exception exists.  Fairness demands complete production so that TriReme can consider all documents, not just those AngioScore wishes to rely upon.  Fed. R. Evid. 502(a)((3); *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 625 (N.D.Cal.2006) (explaining rationale for broad waiver is to prevent a party "from disclosing

---

[1] AngioScore contends that TriReme consented to AngioScore conducting a keyword search in lieu of any other production obligation.  Not so.  Regardless, TriReme had no reason to move to compel because AngioScore represented that the files would not be produced due to privilege.

communications that support its position while simultaneously concealing communications that do not") (citations and internal quotations omitted).[2]

AngioScore's selective production is particularly troubling because AngioScore wishes to rely on what is *not* in the prosecution files. For example, AngioScore argues that no one mentioned Dr. Lotan as an inventor. It is self-evident, however, that TriReme cannot investigate this contention without examining the entire prosecution file. Similarly, AngioScore argues that another of the inventors, Dr. Tzori, actually made Dr. Lotan's contribution. Again, TriReme will be unable to argue that no one ever said Dr. Tzori made the critical contribution unless it can examine the entire prosecution file.

In *Theranos*, the defendant produced 54 prosecution communications to show he was the actual inventor and had not copied the plaintiff's confidential information to apply for the patent at issue. *Theranos*, 2013 WL 2153276 at *5. The produced files spanned a two-year period and discussed draft applications and prosecution comments, the scope of the invention, and prior art. *Id*. at *2. Under Rule 502, the court found this production "sufficient to require disclosure of all of the remaining documents on the entire '612 Patent prosecution." *Id*. at *4. Unless the plaintiff had the opportunity to review the unproduced documents "to ascertain the context of the disclosed communications," the defendant would have been free to use the selectively-produced documents as a sword. *Id*. Indeed, the defendant had "offered the absence of references" to prove a negative (*i.e.*, that he had never used Theranos' confidential information). *Id*. Here, AngioScore's selective production presents exactly the same risk.

*Second*, AngioScore's assertion that it has only produced privileged communications relevant to "inventorship" is simply wrong; the communications span the length and breadth of the prosecution. The produced communications discuss claim language (ASPRO000000S31, 37, 55-58, 65-67), drawings (28, 31-32, 37, 55-58, 65-67), prior art (55, 133), filing strategies (13, 58, 106-08), inventorship (58, 65-67), billing (31-32), and patent scope (13, 29, 33-34). *See* Ex. B. They were created between January 2003 (ASPROS00000067) and March 2014 (127). *Id*. Whether these documents overlap with inventorship issues is irrelevant.

---

[2] AngioScore's reliance on *Stanford* to argue a limited subject matter waiver is misplaced. In that case, the receiving party only requested the production of files relating to inventorship—not all prosecution files. *See Stanford*, 237 F.R.D. at 620-21. Moreover, the Court found that "the subject matter of the waiver should be construed broadly," and went so far as to include all documents post-dating the waiver by decades. *Id*. at 625, 628. AngioScore's other cases fare no better. *Cormack* involved the production of privileged documents created before prosecution began to show an earlier priority date. *Cormack v. U.S.*, 118 Fed. Cl. 39, 42 (Ct. Fed. Cl. 2014). *Cormack* and *Theranos* are thus distinguishable on their facts, as the *Cormack* court recognized. *Id*. at 44, n.5. No such distinction applies here. Both *Theranos* and this case involve the attempted use of selected prosecution files to prove a negative. *Id*. In *Phoenix*, the documents produced were limited to communications preceding the filing of a patent application, and, unlike AngioScore, the producing party was not using the documents to gain a benefit. *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576-78 (N.D. Cal. 2008). Likewise, in *Lear*, the production consisted of a single document limited to a disclosure of the invention and its conception date. *Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, No. 04-73461, 2006 WL 800740, at *1 (E.D. Mich. Mar. 28, 2006). None of these cases involved disclosures of broad subject matter, as AngioScore's documents do here.

AngioScore's prosecution privilege log confirms that the documents and redacted material AngioScore has withheld fall into the same categories as the produced documents.  *See* Ex C, Entries 13, 171, and 173 (claim language); 123 and 169 (drawings); 159, 170, 172, and 173 (prior art).  Other log entries are so vague that it is impossible to ascertain their subject matter.  For example, several entries simply describe the communication as "legal advice regarding" the patent applications at issue.  *See, e.g.*, Ex. C, Entries 1-7, 11-12, 15, *passim*.  In addition, the many redactions and withheld attachments[3] notable from AngioScore's production are necessarily within the same subject matter as the remainder of the communications that were produced.  *See, e.g.*, Ex. B at ASPROS00000029-30 and 055.  TriReme respectfully requests the production of the withheld documents for both of these reasons.

*AngioScore:*  AngioScore contends the appropriate scope of waiver is limited to all documents in the internal prosecution history files of the patents-in-suit, their parent applications, and the original provisional application regarding inventorship and/or contributions to the inventions.

The scope of waiver of attorney client privilege extends to "all communications ***on the same subject matter***."  *Stanford*, 237 F.R.D. at 625 (emphasis supplied).  In circumstances directly applicable here, courts in this District have held that the scope of waiver extends only to communications relevant to inventorship.  In *Stanford v. Roche*, the patentee submitted a petition to the PTO seeking to correct inventorship of App. No. 07/883,327 that disclosed communications with counsel regarding inventorship.  237 F.R.D. at 626.  Judge Patel held that the scope of waiver effected thereby extended to "documents and communications surrounding inventorship on the '327 Application and patents subsequently issuing thereon."  *Id*.  Courts have repeatedly rejected the argument advanced by TriReme that waiver with regard to certain aspects of a patent's prosecution effectuates a waiver over all prosecution documents.  *See, e.g.*, *Phoenix Sol. Inc. v. Wells Fargo Bank.*, 254 F.R.D. 568, 578 (N.D. Cal. 2008); *Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, No. 04-73461, 2006 WL 800740, *1 (E.D. Mich. Mar. 28, 2006).

Contrary to precedent, TriReme seeks production of document that do not concern "the same subject matter."  Indeed, TriReme seeks product of documents that bear no relation to either the subject matter of the produced communications or inventorship.  Moreover, to the extent TriReme seeks to obtain the prosecution files in currently pending applications in its vague demand, it vastly overreaches.  AngioScore's currently pending U.S. App. No. 14/275,264 is not at issue in this case and cannot be because it has not yet issued.  *See* 35 U.S.C. § 256.

TriReme's reliance on *Theranos* is misplaced.  In *Theranos*, the overarching issue in the case was whether the defendant misappropriated confidential information and used such information to procure the patents-in-suit.  *Theranos*, 2013 WL at *2.  This issue permeated the entire prosecution and therefore the "subject matter" of the waiver appropriately extended to the entire prosecution history, as other courts have recognized in cabining *Theranos* to its facts.  *See Cormack*, 118 Fed. Cl. at 44 (noting that "a court did find a relatively broad waiver in [*Theranos*], but the partial disclosures of attorney-client communications in that case had a

---

[3] Although AngioScore has now produced a small number of attachments to the documents upon which it intends to rely, many others are still missing without a sufficient explanation as to why.

4

bearing on an overarching issue that concerned use of confidential information. That usage *vel non* permeated the entire case…").  Here, in contrast, the issue in dispute is discrete – inventorship – and there is no claim of misuse of third party confidential information.

TriReme's contention that it must review the entire file history files to confirm that no one mentioned Dr. Lotan and/or that someone else made the contributions that Dr. Lotan claims to have made is similarly meritless.  AngioScore's review of the files revealed only one mention of Dr. Lotan and that email was produced.  *See* Ex. B at -33.  Moreover, communications of this nature would be precisely within the scope of AngioScore's waiver, and further confirm that AngioScore's proffered scope is correct.  Allowing a litigant access to all privileged communications to insure the agreed scope of waiver was properly applied would vitiate any ability to limit the scope of waiver to particular subject matter, as controlling law requires.

Since AngioScore has already produced all documents in Mr. Heslin's hard copy file that make any mention of Dr. Lotan or which bear on the contribution of any individual to the inventions, TriReme cannot identify any "fairness" consideration that would justify construing the subject matter waiver more broadly.  Evid. R. 502 (waiver is limited to material that "ought in fairness" be considered together).  For example, TriReme has provided no reason why it would need documents or communications relating exclusively to responding to prior art or examiner communications.  Such communications are not at issue in this case and need not be considered at all (much less together with the communications AngioScore has produced relating to inventorship).  Thus, even if TriReme's argument were true that some of the documents AngioScore produced relate to other issues, in addition to inventorship, that position is immaterial to the scope of waiver, which is defined by and confined to the fairness considerations in this case.  *See, e.g.*, Ex. B at -58, -65, -66, -67 (documents TriReme contends are relevant to inventorship and other issues).  In any event, the documents that TriReme has identified that are allegedly relevant to issues other than inventorship are all either not privileged (*e.g.*, Ex. B at -31, -32, -127, -133)[4] or include only passing mention of "prior art" or "claims drafting" such that they cannot possibly effectuate a subject matter waiver over the entire prosecution file.  *See, e.g.*, *id*. at -58 (discussing inventorship and mentioning claim drafting); -55 (referring to "prior art" but not actually identifying any such art); *Cf. Phoenix Solutions,* 254 F.R.D. at 578 (waiver extends only to specific references discussed in the disclosed documents).

**Each Party's Final Proposed Compromise**

*TriReme:*  The production of all prosecution files no later than 12 PM PT on August 9, 2016.

*AngioScore:*  AngioScore respectfully requests that the Court order that AngioScore's production of all documents from the prosecution files for the patents-in-suit, their parents, and their original provisional relevant to inventorship satisfies its production obligations.

---

[4] TriReme's suggestion that AngioScore's waiver extends to patents filed or issued after the patents-in-suit through to March 2014 is incorrect.  The only document TriReme cites for its proposition is ASPROS00000127, a non-privileged cover email forwarding a fee transmittal receipt.  The production of non-privileged material does not effectuate any waiver or govern the scope of waiver of attorney-client privilege.

Respectfully Submitted,

ARNOLD & PORTER LLP

By: */s/ David A.Caine*
James C. Otteson
David A. Caine
Thomas T. Carmack
Michael D.K. Nguyen

Attorneys for Plaintiff
TRIREME MEDICAL, LLC

QUINN EMANUEL URQUHART & SULLIVAN LLP

By: */s/ Matthew D. Robson*
Matthew D. Robson
Attorneys for Defendant
ANGIOSCORE, INC.