UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| TRIREME MEDICAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ANGIOSCORE, INC.,<br><br>Defendant. | Case No. 14-cv-02946-LB<br><br>**DISCOVERY ORDER**<br>Re: ECF No. 106 |

This is a case for correction of patent inventorship under 35 U.S.C. § 256. (ECF No. 1 at 2, ¶ 3.)[1] TriReme alleges that the patents-in-suit failed to list Dr. Chaim Lotan as a co-inventor.[2] The parties have a discovery dispute about the extent of AngioScore's waiver of attorney-client privilege when it waived privilege and disclosed documents relevant to inventorship from its former prosecution counsel's files.[3] The court can decide this matter without oral argument under Civil Local Rule 7-1(b) and holds that AngioScore's production waives privilege only for documents relevant to inventorship but does not — as TriReme argues — require production of the "entire prosecution file."

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* ¶ 21.

[3] Letter Brief — ECF No. 106.

ORDER (No.14-cv-02946-LB)

In mid-July, AngioScore obtained the hard-copy files of its former prosecution counsel for the patents-in-suit, their parent applications, and the original provisional application in the family.[4] It then disclosed non-public material that (1) was not privileged or (2) "was relevant to inventorship, whether by discussing inventorship *per se* or the contributions to the subject matter disclosed or claimed in the patents-in-suit, their parents, or the original provisional application."[5] Category 2 included privileged information. AngioScore agrees that it intentionally waived privilege over all portions of the files relevant to inventorship.[6] But it denies that it waived privilege for all prosecution files and claims that it expressly limited its waiver to documents regarding inventorship or contributions to inventorship.[7]

Rule 26(b)(1) of the Federal Rules of Civil Procedure describes the basic scope of discovery — *i.e.,* what information parties can rightly demand from one another:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b). Discovery is limited by the attorney-client privilege. Fed. R. Civ. P. 26(b)(1) & (b)(3)A). The issue here is the scope of AngioScore's intentional waiver of attorney-client privilege.

The decisive standard lies in evidentiary Rule 502. Under Rule 502(a), when a party "waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication . . . only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a)(1). Generally, then, a waiver extends to all

---

[4] *Id.* at 3.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 6.

ORDER (No.14-cv-02946-LB)   2

communications on the same subject matter. *Cormack v. United States*, 118 Fed. Cl. 33, 43 (2014) (citing cases). There is no bright-line test for evaluating waiver; instead, courts weigh the circumstances of the disclosure, the nature of the legal advice, and the prejudice to the parties of permitting or prohibiting further disclosures. *See id*. Courts are concerned with fairness and avoiding the inequitable results that can attend the selective waiver of privilege. *See id.*

The issue is whether the scope of AngioScore's waiver extends beyond documents regarding inventorship. The dispute is specifically over the last two heads of the Rule 502(a) test. TriReme argues that the disclosures are broader than "inventorship" and include claim language, prior art, and patent scope, among other things.[8] In fairness, it argues, it is entitled to the "entire prosecution file" to evaluate context and to avoid AngioScore's selective use of information to support its claims of inventorship.[9] AngioScore responds that it limited its production and its waiver of privilege to documents about inventorship, and TriReme is not entitled to documents that bear no relationship to inventorship.[10]

The court does not see a basis to extend AngioScore's waiver regarding inventorship to a broader disclosure of the whole patent-prosecution file. *See Cormack*, 118 Fed. Cl. at 43-46 (waiver on "particular" topics did not yield broad disclosure of "entirety of patent prosecution" material); *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.,* 254 F.R.D. 568, 576-79 (N.D. Cal. 2008) (patent infringement) (waiver limited to time and topic of disclosed material); *Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.,* 2006 WL 800740, *1-2 (E.D. Mich. Mar. 28, 2006) (waiver of information on "date and content of conception of . . . invention" did "not extend" to "all documents related to the . . . invention and the drafting, filing or prosecution of the . . . patent"). A particular comment from *Cormack* applies here. Considering the particular topics over which privilege had been waived, the *Cormack* court rejected the idea that emails had broadly waived privilege over other topics merely by discussing them. *Cormack*, 118 Fed. Cl. at 46. That

---

[8] *Id.* at 5.
[9] *Id.* at 4-6.
[10] *Id.* at 6.

ORDER (No.14-cv-02946-LB)   3

court wrote: "These e-mails reflect ordinary, expected efforts by patent counsel. Nothing in the e-mails provides grounds for an all-encompassing waiver of privilege regarding attorney-client communications during patent prosecution." *Id.* The same can be said here. The emails that the parties filed in connection with this dispute do mention other topics than Dr. Lotan's inventive contribution — but they do so only in the "ordinary, expected" way of human conversation on any moderately complex topic. *See generally* (ECF No. 105-2) (sealed). "Nothing in the e-mails provides grounds for an all-encompassing waiver of privilege" over the "entire prosecution file."

The case on which TriReme relies most — *Theranos, Inc. v. Fuisz Techs., Ltd.*, No. C 11-5236 PSG, 2013 WL 2153276 (N.D. Cal. May 16, 2013) — is significantly different from this case for the reason that the court identified in *Cormack, supra*. That is, while *Theranos* "did find a relatively broad waiver, . . . the partial disclosures of attorney-client communications in that case had a bearing on an overarching issue that concerned use of confidential information." *Cormack*, 118 Fed. Cl. at 44 n. 5. More exactly, the *Theranos* plaintiff claimed that the defendant had misused its "intellectual property to improperly secure" a patent. *Theranos*, 2013 WL 2153276 at *2. This "overarching issue" of alleged misuse "permeated the entire [*Theranos*] case," and the relevance of the partial disclosure to that enveloping question led the *Theranos* court to its "broad waiver" decision "to prevent the disclosing party from 'cherry-picking the selective communications that [were] favorable to'" it. *Cormack*, 119 Fed. Cl. at 44 n. 5 (quoting *Theranos*, 2013 WL 2153276 at *4). This is not the same kind of situation. The question here is what Dr. Lotan contributed to inventing the subject patents. For present purposes, at least, that issue is more contained than the one that motivated *Theranos*. The question of Dr. Lotan's contribution does not open onto the "entire prosecution file." In short, *Theranos* does not translate to this situation.

That, insofar as it can be isolated, is the question of the "same subject matter" under Rule 502(a)(2). In this context, the question of inventorship and contribution is not the "same subject matter" as everything else embraced in the "entire prosecution file" for the relevant patents. This does not amount to an "overlap exception" from the waiver rule (to borrow TriReme's term); it is merely recognizing that, in this context, the question of Dr. Lotan's contribution is not the "same subject matter" as "filing strategies" or "patent scope" or "billing" or the rest.

What of "fairness"? Should communications discussing these other topics be "in fairness . . . considered together" with those discussing inventorship? The court does not think that they should. This is not obviously a case in which a party is selectively disclosing privileged material to gain a tactical advantage; put differently, and using another familiar metaphor, it is not clearly a situation in which AngioScore might be using the privilege as "both shield and sword." *See, e.g., Theranos*, 2013 WL 2153276 at *1; *Phoenix Solutions*, 254 F.R.D. at 576. This appears to be one of TriReme's main concerns: that, to support its "negative" assertion that, in TriReme's words, "no one mentioned Dr. Lotan as an inventor," AngioScore has produced only documents that support that contention, while withholding others that do mention Dr. Lotan's inventive contribution. *See* (ECF No. 106 at 4-5).

This is not the type of case that seems especially susceptible to this kind of deception. The concern is understandable. There is sometimes something about the produced material, or the issue it speaks to, that immediately suggests that other, related material has been withheld. (The simplest example being where a party produces part of a document but redacts unhelpful information. The redaction quickly suggests that the deleted material cuts against the producing party. In that situation, the party will normally be forced to reveal the rest of the communication. Just such a situation lies behind evidentiary Rule 106 — which applies the same fairness standard as Rule 502. *See Theranos*, at *3 & n. 26; Fed. R. Evid. 106.) Here, however, the court suspects that we are in the different situation in which one party simply disbelieves that the other has produced everything relevant to a given point. After all, AngioScore asserts that it "has already produced all documents in Mr. Heslin's hard copy file that make any mention of Dr. Lotan or which bear on the contribution of any individual to the inventions." (ECF No. 106 at 7.) That is as much as the court would order AngioScore to produce to resolve this particular dispute. To use yet another term from the field of privilege waiver, AngioScore has "put in issue" the extent to which its privileged material mentions Dr. Lotan — at least in connection with his inventive contribution. TriReme is plainly correct: AngioScore could not produce only some such communications (those that do not mention Dr. Lotan as a contributing inventor), while withholding others (those that do so mention him). The court would order AngioScore to produce

all communications that mention Dr. Lotan. The court would perhaps limit this to those that discuss him in connection with inventorship and contribution; the court would also suggest that, insofar as such communications touched upon other topics, AngioScore produce the communications for *in camera* review. But AngioScore's assertion that it has "produced all documents . . . that make any mention of Dr. Lotan or which bear on the contribution of any individual" renders such an approach moot. If AngioScore asserts that there are no other documents mentioning Dr. Lotan or his contribution, then it is hard to know what more the court can demand of the defendant. Taking all this in view, fairness does not dictate that the "entire prosecution file" be considered together with the material that AngioScore has disclosed.

Finally, TriReme argues that some entries in AngioScore's privilege log are so vague that it is impossible to see whether the withheld information falls within the subject matter of the documents that AngioScore produced.[11] The print on the privilege log is too small to read easily. Moreover, to the extent that TriReme's objections are that AngioScore withheld material relevant to claim language, prior art, and drawings, this order disposes of that objection. If TriReme wants to raise a further objection to the privilege log, it must confer with AngioScore first to see whether AngioScore can address the objections about vagueness. Thereafter, the parties may raise any disagreement in a letter brief.

**IT IS SO ORDERED.**

Dated: August 9, 2016

LAUREL BEELER
United States Magistrate Judge

---

[11] *Id.*